# In the United States Court of Federal Claims

No. 12-321C

(Filed: November 26, 2012)

*****************************************

LCM ENERGY SOLUTIONS,

                          Plaintiff,

v.

THE UNITED STATES,

                         Defendant.

*****************************************

Motion to Dismiss for Lack of Subject Matter Jurisdiction; Section 1603 of the American Recovery and Reinvestment Act of 2009; Money-Mandating Source of Law; Consequential Damages.

*John C. Hayes, Jr.,* Nixon Peabody LLP, Washington, D.C., for Plaintiff.

*Matthew F. Scarlato*, with whom were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Kenneth Dintzer*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER ON DEFENDANT'S
## MOTION FOR PARTIAL DISMISSAL

WHEELER, Judge.

      Plaintiff LCM Energy Solutions is seeking money damages under Section 1603 of the American Recovery and Reinvestment Act of 2009, 26 U.S.C. §48, which directs the United States Treasury Department to award grants to entities that "place[d] in service" various types of "energy property," such as solar panels, subject to certain conditions. Essentially, LCM claims that it did not receive the full amount of the grant to which it was entitled.  The Government does not dispute that Section 1603 is a money-mandating statute, and that this Court has jurisdiction under the Tucker Act to determine the merits of LCM's claim.  However, the Government contends that Section 1603 does not authorize an award of consequential damages, and moves the Court to dismiss LCM's

consequential damages claim for lack of subject matter jurisdiction.  For the reasons explained below, the Court grants the Government's motion.

## Background

Section 1603 of the American Recovery and Reinvestment Tax Act of 2009 ("Recovery Act"), 26 U.S.C. §48 ("Section 1603") directs the United States Treasury Department ("the Treasury") to provide "Grants for Specified Energy Property In Lieu of Tax Credits."  While a detailed discussion of the operation of the program is not necessary for resolving this motion, in essence, it reimbursed persons or entities for a portion of the cost of placing "specified energy property," such as solar panels, into service in 2009 or 2010, or later than 2010 in limited circumstances.

According to the facts alleged in its complaint, Plaintiff LCM Energy Solutions ("LCM") "is involved in the business of providing solar panel systems for lease." Compl. ¶ 26.  LCM purchased 18 "Power Systems," which generate electricity from solar energy, at a cost of $2,965,460.  Id. ¶¶ 27-28.  Between August 11, 2010 and March 3, 2011, LCM placed these Power Systems into service pursuant to leasing arrangements. Id. ¶ 30.  LCM then submitted 18 applications to the Treasury for reimbursement through the Section 1603 program, seeking a total of $889,638 in grants.  Id. ¶ 31.  LCM contends that the Power Systems qualify in all material respects as "specified energy property" within the meaning of Section 1603, and that the applications met all other requirements of the grant program.  Id. ¶¶ 28-30, 32-34.

In letters dated March 7, March 22, and May 20, 2011, the Treasury notified LCM that it had partially allowed the grant applications, but would only pay $482,504 of the total amount requested.  Id. ¶¶ 31, 35.  In one award letter, the Treasury explained that it had made a reduced award "because the presented cost basis was higher than open market expectations for projects of this size and in this location."  Id. ¶ 36.  In another award letter, the Treasury stated that "[t]he documentation, specifically, a legal opinion dated 2/10/2011 and provided with your prior applications, states that the amount on the invoice … does not reflect the actual price paid by LCM for the property.  The cost basis has therefore been adjusted to reflect competitive market conditions between parties with adverse interests."  Id. ¶ 37.[1]

---

[1] It is not entirely clear at this point in the proceedings why the Treasury was concerned about a lack of competitive market pricing in LCM's purchase of the Power Systems, much less whether the concern was reasonable.  However, Plaintiff's complaint alleges that the company from which Plaintiff purchased the Power Systems, RCIAC Inc. ("RCIAC"), itself made several applications for grants through the Section 1603 program; that the Treasury awarded at least one grant to RCIAC but shortly thereafter "raised a number of concerns" regarding its eligibility for the program; and that LCM was then formed, apparently by RCIAC's owner, "due to" these concerns.  Compl. ¶¶ 20-25.

LCM contends that under the terms of Section 1603, it is entitled to the full amount of the grant award it requested. Accordingly, in its complaint, the company brings a single claim premised on the Treasury's alleged "failure to provide a timely and complete grant to Plaintiff." Id. ¶ 46. For this claim, LCM seeks, *inter alia* and as relevant here, (1) "monetary relief in the amount of the full grant to which LCM is entitled under Section 1603," less the amount it has already been paid, and (2) "consequential damages, special damages, or other damages that result as a consequence of the Defendant's violation of its statutory and regulatory mandates." Id. ¶50.

The Government does not dispute this Court's jurisdiction to adjudicate the merits of this claim and, should Plaintiff prevail, to award it the first category of damages listed above. However, the Government contends that the Court lacks jurisdiction to award consequential damages, and that this portion of Plaintiff's claim should therefore be dismissed. For the reasons explained below, the Court agrees, and dismisses that portion of Plaintiff's claim that seeks consequential damages for lack of subject matter jurisdiction.

Discussion

I.    Standard of Review

The Government does not dispute LCM's alleged jurisdictional facts, but raises a purely legal challenge to the company's assertion that this Court may adjudicate its claim for consequential damages. Accordingly, for the purposes of deciding this motion, the Court accepts all undisputed allegations in the complaint as true, and will draw all reasonable inferences in the plaintiff's favor. Envtl. Safety Consultants, Inc. v. United States, 95 Fed. Cl. 77, 89 (Fed. Cl. 2010) (citing, *inter alia*, Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995)).

II.    Subject Matter Jurisdiction under The Tucker Act

LCM asserts that this Court has jurisdiction over its sole claim, including both categories of damages, pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1). That Act, the principal statute governing the jurisdiction of this Court, provides that the Court of Federal Claims possesses jurisdiction over claims against the United States that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States. Id. However, while the Tucker Act contains both a grant of jurisdiction and a waiver of sovereign immunity, Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005), it does not itself create any substantive rights enforceable against the United States for money damages, Holmes v. United States, 657 F.3d 1303, 1309 (Fed. Cir. 2011); see also United States v. Bormes, ___ U.S.___, 2012 WL 5475773, at *4 (Nov. 13, 2012).

Thus, in order to utilize the Tucker Act's waiver of sovereign immunity, a plaintiff must "identify a substantive right for money damages against the United States separate from the Tucker Act itself." <u>Todd v. United States</u>, 386 F.3d 1091, 1094 (Fed. Cir. 2004). Whether a given law creates such a right to money damages "depends upon whether … [the] statute 'can be fairly interpreted as mandating compensation by the Federal Government for the damage sustained.'" <u>United States v. Testan</u>, 424 U.S. 392, 400 (1976) (quoting <u>Eastport S.S. Corp. v. United States</u>, 372 F.2d 1002, 1009 (Ct. Cl. 1967)); <u>see also</u> <u>United States v. White Mountain Apache Tribe</u>, 537 U.S. 465, 473 (2003) ("It is enough ... that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages. While the premise to a Tucker Act claim will not be 'lightly inferred,' a fair inference will do.") (quoting <u>United States v. Mitchell</u>, 463 U.S. 206, 218 (1983)).

III.   <u>Analysis</u>

The question of whether Section 1603 is "money-mandating" (and therefore confers a Tucker Act right) has already been addressed by this Court, and answered in the affirmative. In <u>ARRA Energy Company v. United States</u>, 97 Fed. Cl. 12, 19-20 (Fed. Cl. 2011) (Bush, J.), the Court provided an extensive analysis of Section 1603, and concluded that it "compels the payment of money by the government and does not provide the government with any discretion to refuse such payments when the specific requirements of the statute are met." Therefore, the Court held that Section 1603 is money-mandating. <u>Id.</u> at 22. While this Court is not bound by that holding, <u>see</u> <u>West Coast Gen. Corp. v. Dalton</u>, 39 F.3d 312, 315 (Fed. Cir. 1994), it finds the analysis in <u>ARRA</u> to be sound and persuasive, and adopts it here in its entirety.[2]

The question that remains, however, is whether Section 1603 also entitles a plaintiff to seek consequential damages as part of an action brought pursuant to that provision. LCM advances three arguments regarding the availability of such relief. First, LCM interprets the holding in <u>ARRA</u> as "permitt[ing] the plaintiffs [there] to seek consequential damages in addition to the payments they would have received had their grant applications been approved," and argues that if this Court accepts the reasoning and holding of that case, it must likewise permit a claim for such damages here. Pl. Mem. at 6. Secondly, LCM argues that, substantively speaking, Section 1603 can be "fairly interpreted" as mandating the provision of consequential damages in appropriate circumstances. <u>Id.</u> at 6-8. Finally, while LCM acknowledges that consequential damages are typically only available in breach of contract cases, if at all, it argues that such damages are available here because "this case … closely resembles a breach of contract case[.]" <u>Id.</u> at 9. The Court will address each of these arguments in turn below.

---

[2] As noted above, the Government does not argue that <u>ARRA</u> was wrongly decided, and concedes that Section 1603 is money-mandating as to the amount of a grant to which a Plaintiff may be due.

A. <u>ARRA</u> Does Not Address the Availability of Consequential Damages Under Section 1603

LCM's first argument is that, since both counts of the plaintiffs' complaint in <u>ARRA</u> contained demands for consequential damages, and that court asserted "subject matter jurisdiction over both [of these] counts," <u>ARRA</u> stands for the proposition that this Court must possess jurisdiction to award such damages. <u>Id.</u> at 6 (quoting <u>ARRA</u>, 97 Fed. Cl. at 13-14). The Court disagrees.

The first of the counts at issue in <u>ARRA</u> was essentially identical to the one now advanced by LCM – *i.e.*, it asserted that the Treasury violated its mandatory obligation to award reimbursement grants to the plaintiffs in the full amount requested. <u>ARRA</u>, 97 Fed. Cl. at 14. As explained above, the Court held that because Section 1603 is money-mandating, it retained jurisdiction to hear this claim. <u>Id.</u> at 22. The <u>ARRA</u> plaintiffs' second count asserted, in the alternative, that Section 1603 constituted a unilateral contract which the plaintiffs had accepted by filing their reimbursement applications. <u>Id.</u> at 25. Although the <u>ARRA</u> court held that it (theoretically) had subject matter jurisdiction to hear such a claim, it further held that it could "not discern … any language in [S]ection 1603 or its legislative history that would allow a reasonable inference that the government intended to enter into contracts with all persons and entities that filed applications for reimbursement grants." <u>Id.</u> at 28. The <u>ARRA</u> court therefore dismissed this second count for failure to state a claim. <u>Id.</u> at 28-29.

However, nowhere in the <u>ARRA</u> decision did the Court address the type of money damages potentially available under either of these counts. Although LCM is technically correct that the <u>ARRA</u> court has retained jurisdiction over the entirety of the first claim, which includes a demand for consequential damages, the issue of the *actual* availability of these damages did not arise in that case. Simply put, the <u>ARRA</u> decision is silent on whether consequential damages are available under Section 1603, and the Court therefore finds that the decision is immaterial to this question.

B. Section 1603 Does Not Mandate the Payment of Consequential Damages

LCM's second argument is that, as a substantive matter, Section 1603 can be "fairly interpreted" as mandating the award of consequential damages in appropriate circumstances. Pl. Mem. at 6-8. Here, LCM contends that:

> [t]he Recovery Act was designed to provide a fiscal stimulus to the nation's ailing economy by, among other things, incentivizing investment in renewable energy sources. By providing that Treasury 'shall pay' a specified sum, within a specified time period, 'to reimburse' [such investment] …

> Congress foresaw – indeed intended – that businesses and
> individuals would structure investment and lending
> relationships in reliance on Treasury's clearly defined duties
> under Section 1603.

Id. at 8.  Thus, LCM argues that if consequential damages are not available under Section 1603, "[a] claimant would … be penalized, solely as a result of Treasury's breach … for engaging in the very behavior Congress intended to incentivize."  Id.

Even assuming this interpretation of congressional intent to be reasonable, LCM has failed to cite a single precedent supporting the proposition that the Government's intent to incentivize economic activity gives rise to the availability of consequential damages under the Tucker Act.  Indeed, LCM has not cited a single case in which consequential damages have been awarded pursuant to *any* money-mandating provision, regardless of the provision's purpose or intent.  On the other hand, as the Government points out, in finding that Section 1603 is money-mandating, the ARRA court relied heavily on the fact that the provision leaves the Government with "no discretion to reimburse an applicant for less than, *or more than*, 30 percent of the correct basis of the property[.]"  ARRA, 97 Fed. Cl. at 22; see also Gov't Reply at 4.

In short, the Court finds that Plaintiff's novel theory regarding the availability of consequential damages has no basis in either statute or case law.  As the ARRA court held, Section 1603 is money-mandating because it contains "a clear standard for the payment of money *and states a precise amount of money to be paid*."  97 Fed. Cl. at 21.  This precision cannot be "fairly interpreted" as mandating the payment of anything beyond the exact amount of the full grant to which a given plaintiff may be entitled, much less the highly amorphous and subjective category of consequential damages.

## C.  LCM Has Not Raised a Breach of Contract Claim

LCM's final contention is that, although consequential damages are typically only awarded in breach of contract cases (if at all), such damages should be available here because "this case … closely resembles a breach of contract case[.]"  Pl. Mem. at 9.  As the Government points out, ARRA expressly rejected the theory that Section 1603 creates an implied-in-fact contract with qualified applicants for reimbursement, and LCM has not chosen to raise such a claim here.  See 97 Fed. Cl. at 27-28.  The Court finds that any "resemblance" Plaintiff's sole claim may have to a separate, non-existent breach of contract claim is immaterial.  Consequential damages lie in contract, and then only in limited circumstances.  See, e.g., SGS-92-X003 v. United States, 85 Fed. Cl. 678, 710-11 (Fed. Cl. 2009).  As LCM has not stated any contract claim, it cannot pursue consequential damages under a contract-based theory.

Conclusion

For the reasons set forth above, the Government's motion to partially dismiss Plaintiff's claim for lack of subject matter jurisdiction is GRANTED. Plaintiff may proceed with only that portion of its claim seeking money damages for the alleged underpayment of its reimbursement application pursuant to Section 1603. The Court's November 8, 2012 Order remains in effect, and governs the completion of discovery in this case.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge